UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD W. GUENTHARDT,

      Plaintiff,

v.                                  Case No. 03-74277

MM/CARRON SERVICES, INC.,           HONORABLE AVERN COHN
a Michigan Corporation; and
MARK T. MEGGE,

      Defendants.

_____/

**MEMORANDUM AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT[1]**

---

[1] The Court originally scheduled this matter for hearing.  Upon review of the parties' papers, however, the Court finds that oral argument is not necessary.  See E.D. Mich. LR 7.1(e)(2).

## I. Introduction

This is a breach of contract case.  Plaintiff Richard Guenthardt (Guenthardt) is suing Defendants MM/Carron Services, Inc. (MM/Carron) and Mark Megge (Megge) in a six-count complaint as follows:

| Count | Claim |
|-------|-------|
| 1 | Breach of Contract; |
| 2 | Anticipatory Breach of Contract; |
| 3 | Violation of Mich. Comp. Laws § 450.1345(3), regarding distributions made to shareholders of a corporation; |
| 4 | Breach of Fiduciary Duty; |
| 5 | Unjust Enrichment; and |
| 6 | Declaratory Judgment |

Before the Court are (1) Defendants' Motion for Summary Judgment, and (2) Plaintiff's Cross-Motion for Partial Summary Judgment.[2]  For the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.  Plaintiff's Cross-Motion for Partial Summary Judgment is DENIED.[3]

---

[2] Although Guenthardt styles his motion as one for "partial summary judgment," he addresses in his brief each claim asserted in his complaint.  Accordingly, the Court treats his motion as one for summary judgment in its entirety.

[3] Also before the Court is Guenthardt's "Motion for a Reasonable Discovery Period."  This is an unnecessary motion.  A conference call to the Court would have been sufficient to request a reasonable discovery period.

## II. Background[4]

In the early 1970s, Guenthardt and Megge began working for Carron &

Company, Inc. (Carron), a company that provided design, build, and engineering

services to the automotive industry.  In 1984, they each purchased ten percent of

Carron stock.  In 1987, they purchased the remaining Carron stock.  Each owned fifty

percent of the stock until 1990, when Guenthardt retired and he and Megge signed a

redemption agreement.  The agreement had two main components: (1) purchase of

---

[4] As a preliminary matter, the Court is constrained to observe that the parties have been deficient in their presentation of the matters germane to the pending motions.  Indeed, they have turned what is an ordinary breach of contract case into something much more complicated.  These deficiencies are particularly disappointing to the Court in light of the fact that each of the parties is represented by a major Detroit law firm.

First, the parties' papers contain numerous conclusory statements, have very little application of legal standards to the factual background, and are replete with information that is not relevant to the issues before the Court.  The briefs are unorganized and difficult to follow.  For example, defendants combined into one document (1) their brief in opposition to Guenthardt's motion, (2) their reply brief to their own motion, and (3) their brief opposing Guenthardt's motion for a reasonable discovery period.

Second, the parties did not follow the Court's summary judgment motion practice guidelines.  Neither party filed a statement of material facts not in dispute or a counter statement of disputed facts.  The parties did not file exhibits in separate looseleaf notebooks with tabs and indices and did not provide the Court with copies of cases on which they rely in Westlaw format as the Court prefers.  The parties also did not highlight relevant portions of exhibits.  For the Court's motion practice guidelines, see http://www.mied.uscourts.gov/_practices/cohn/motion.htm.

Finally, the parties filed a total of three supplemental briefs without first seeking leave from the Court, as is required under E.D. Mich. LR 7.1(f).  Guenthardt filed two of these supplemental briefs, yet never provided the Court with courtesy "judge's copies."  Although the Court recognizes electronic filing is the official court record, it is the Court's standard requirement that judge's courtesy copies are to be submitted directly to the Court's chambers for, inter alia, all motions and supporting materials, documents larger than twenty pages, indices of exhibits, and tabbed exhibits.  For a full listing of these requirements, see http://www.mied.uscourts.gov/_practices/cc.htm.

Guenthardt's stock, and (2) continuation of his health insurance.  Carron purchased the

stocks for more than five million dollars, nearly $4 million of which was purchased at the

time of Guenthardt's retirement, and the remaining portion over time.

In addition to outlining the terms and conditions with respect to the redemption of

Guenthardt's stock in Carron, the redemption agreement contained a provision relating

to the continuation of Guenthardt's health insurance.  The provision provides:

> 9.    <u>Medical and Hospitalization Coverage</u>.
> Corporation agrees to provide medical and hospitalization
> coverage for Redeeming Stockholder during his lifetime, said coverage to
> be equal to or superior to the Blue Cross and Blue Shield coverage
> presently maintained for Redeeming Stockholder by Corporation.
> Furthermore, in the event of Redeeming Stockholder's death and if he
> shall be survived by his spouse, said coverage shall continue for the
> lifetime of Redeeming Stockholder's spouse.

Pl. Ex. 3 at 5 (emphasis in original).  While at Carron, Guenthardt was covered by a

Blue Cross Blue Shield medical insurance plan (the Blue Cross plan).

On December 27, 1996, Megge sold all of the assets subject to all of the

liabilities of Carron to American Commercial Industries, Inc. (ACI).  ACI, however, did

not assume the obligation under the redemption agreement to continue Guenthardt's

health insurance.  Instead, Megge incorporated MM/Carron to manage Guenthardt's

health insurance needs.[5]

Guenthardt says that in 1997, MM/Carron changed his health insurance from the

Blue Cross plan to a Comprehensive Major Medical plan (the CMM plan).  Guenthardt

says there were two major differences in the coverage provided by the plan: (1) the

---

[5] The record is silent as to how MM/Carron is funded.

4

CMM plan covered more than the Blue Cross plan, and (2) the CMM plan had a higher deductible than the Blue Cross plan. Guenthardt's attorney, Edward Cheffy, sent two letters to Megge questioning what Guenthardt says was a downgrade in health insurance coverage. Guenthardt says that Megge agreed to reimburse him for his out-of-pocket medical expenses, up to $2,000 per year.

In 2002, MM/Carron again changed the insurance plan to a Preferred Provider Option plan (the PPO plan). Guenthardt says that the PPO plan altered his insurance coverage in several ways, including changes to deductibles and the treatment covered. Guenthardt currently is insured under the PPO plan.

In January 2003, Megge sent Guenthardt a handwritten letter that stated that he had "had some hassles" with the insurance coverage, including an increase in the drug rider co-pay from $5 to $15. Megge also wrote "Carron funds are still available to cover premiums. My attorney is involved but the wheels of progress are slow." Pl. Ex. 9. Guenthardt says he construed this statement to mean that Megge insufficiently funded MM/Carron and that funds might not be available in the future to pay for Guenthardt's health insurance.

In April 2003, Megge and Guenthardt met for lunch in Florida, where Guenthardt and his wife retired. While at lunch, they discussed Guenthardt's insurance, including MM/Carron's funding and the continuation of the insurance. The parties offer differing versions of what transpired during this meeting. Guenthardt says that Megge told him at this meeting that MM/Carron had $60,000 of assets remaining, which Megge said would be enough for two more years of health insurance premiums. Guenthardt says

5

that Megge said he alone made all of the decisions with respect to funding the health insurance and that he did not consult anybody from Blue Cross or an insurance expert before making his decisions.  Guenthardt also says that Megge promised him that Megge would make other arrangements to maintain the health insurance if MM/Carron went out of business.  Megge, on the other hand, says that Guenthardt misunderstood his comments.  He says that he told Guenthardt that MM/Carron had several million dollars of cash on hand but otherwise had assets tied up in investments.  He said that he expected these investments to succeed and start paying profits to MM/Carron, but if they did not then the company's cash on hand would last for approximately two years.  Megge says he never said nor intended to say that MM/Carron would not satisfy its contractual obligation to maintain Guenthardt's health insurance.

Following this meeting in Florida, Guenthardt's attorney wrote to Megge and expressed Guenthardt's concern about whether MM/Carron would continue to pay for his health insurance.  Megge's attorney responded to clarify his position and assure Guenthardt that MM/Carron has and will continue to pay for the health insurance coverage.

Guenthardt says that he and his wife have experienced several problems with the health insurance that they never experienced when they were covered under the Blue Cross plan, but he does not specifically explain what "problems" he and his wife have faced.  He also complains that, under the current PPO plan, he and his wife are now required to divulge their personal medical records to Megge to be reimbursed for

6

their out-of-pocket expenses.[6]

### III. Legal Standard

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion.  See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50.  Additionally, and

---

[6] In the two supplemental briefs Guenthardt filed, he says that he recently received from MM/Carron what he believes to be a fraudulent Internal Revenue Service form W-2 for the 2004 tax year.  Guenthardt says that he has not done any work for MM/Carron that would enable it to classify him as an employee for tax purposes.  He believes that the W-2 he received is an attempt by defendants to justify its group insurance coverage status with Blue Cross Blue Shield.  He also says that he called Blue Cross on August 3, 2005, and learned from a Blue Cross representative that all of Blue Cross's records indicate that Guenthardt is an active employee of MM/Carron.

significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

## IV. Discussion[7]

### A. Count One: Breach of Contract

#### 1. Parties' Arguments

Defendants say that, even if the plan under which Guenthardt receives health insurance is inferior to what existed prior to the redemption agreement because Guenthardt has to pay certain out-of-pocket expenses, MM/Carron has fully reimbursed

---

[7] Because the basis for the Court's jurisdiction is diversity of citizenship under 28 U.S.C. § 1332, the Court must apply the substantive law of Michigan as interpreted by the Michigan Supreme Court. Reid v. Volkswagen of Am., Inc., 575 F.2d 1175, 1176 (6th Cir. 1978).

8

Guenthardt for all of these expenses.  Defendants say that the coverage currently provided to Guenthardt is at least equal to that he had under the Blue Cross plan.  They also say that, even if the Court holds that defendants breached the redemption agreement, Guenthardt cannot prove damages because MM/Carron has reimbursed him for all out-of-pocket expenses related to his medical care.

Guenthardt says that defendants have breached the redemption agreement because the PPO plan is "significantly inferior" to the Blue Cross plan.  He says that the PPO plan limits his freedom of choice with respect to selecting health-care providers and facilities and coverage under the PPO plan is inferior to the Blue Cross plan.  He also says that the PPO plan creates "serious privacy concerns" because he now has to disclose his personal medical information to Megge to obtain reimbursement for his out-of-pocket expenses from MM/Carron.

### 2. Legal Standard

Under Michigan law, the elements of a breach of contract claim are: (1) the existence of a contract between the parties, (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury.  Webster v. Edward D. Jones & Co., L.P., 197 F.3d 815, 819 (6th Cir. 1999) (applying Michigan law).  If a contract is unambiguous, a court cannot consider extrinsic evidence.  Sault Ste. Marie Tribe of Chippewa Indians v. Engler, 146 F.3d 367, 373 (6th Cir. 1998) (applying Michigan law).  It is well established that a contract is to be deemed ambiguous if its terms "reasonably may be understood in different ways."  Lyte v. Malady, 458 Mich. 153 (1998).

9

### 3. Analysis

The parties' dispute centers on whether the health insurance under which Guenthardt was covered subsequent to the Blue Cross plan, i.e., the CMM plan and the PPO plan, is "equal to or superior to" the Blue Cross plan.  The language from the redemption agreement Guenthardt claims defendants breached, "equal to or superior to," reasonably may be understood in different ways.  Accordingly, it is ambiguous contract language over which reasonable minds could differ.  Indeed, the parties vigorously dispute whether the health insurance Guenthardt received after the Blue Cross plan meets the definition of "equal to or superior to."  The parties have not, however, presented the Court with any objective method to determine what is meant by this operative phrase or any details comparing the Blue Cross plan's coverage to coverage under the CMM and PPO plans.  The only evidence in the record is a chart attached to Guenthardt's brief that purports to compare the three plans (i.e., the Blue Cross plan, the CMM plan, and the PPO plan).  See Pl. Ex. 10.  Nowhere, however, does Guenthardt cite the basis for the information contained in the chart.

Whether the CMM plan and the PPO plan are "equal to or superior to" the Blue Cross plan is a factual question that is appropriately lodged with the trier of fact, not the Court.  Indeed, with competing interpretations of the phrase and competing interpretations of how the various insurance plans either meet the definition of "equal to or superior to" or fall short of that standard, the Court would be required to weigh the evidence and make credibility determinations to resolve this dispute.  Such an exercise is prohibited at the summary judgment stage, as only the trier of fact may determine

credibility, weigh evidence, and draw inferences.  See Anderson, 477 U.S. at 255; see also Kampouris v. St. Louis Symphony Soc'y, 210 F.3d 845, 847 (8th Cir. 2000) (Bennett, J., dissenting) ("[W]e must not lose sight of the proper function of the courts, both appellate and trial, when presented with a motion for summary judgment . . . [W]e perform only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim.").

### B. Count Two: Anticipatory Breach of Contract

#### 1. Parties' Arguments

Defendants say that Guenthardt's claim for anticipatory breach of contract fails because (1) the statements on which Guenthardt relies for his claim are not sufficiently distinct and unequivocal for anticipatory repudiation, (2) anticipatory repudiation does not apply where the only remaining obligation is payment of money in installments (namely premium payments), and (3) any statement defendants may have made that Guenthardt construed to be an anticipatory repudiation of the health insurance agreement was retracted.

Guenthardt says that he relies on two statements for his claim: (1) one made by Megge during his April 2003 meeting with Guenthardt in Florida where Megge allegedly told Guenthardt that MM/Carron did not have adequate funds to meet its health insurance obligations to Guenthardt beyond April 2005, and (2) defendants' statements that they have no obligation to provide individual health insurance coverage to Guenthardt if MM/Carron loses its group coverage status in 2005.  He says that these

11

are sufficient to establish anticipatory repudiation.  Additionally, he says that this case is

not about payment of money in installments, but rather about "[d]efendants' duty to

honor their obligation under the Agreement to provide medical insurance coverage."

### 2. Legal Standard

"Under the doctrine of repudiation or anticipatory breach, if, before the time of

performance, a party to a contract unequivocally declares the intent not to perform, the

innocent party has the option to either sue immediately for the breach of contract or wait

until the time of performance."  Stoddard v. Mfrs. Nat'l Bank of Grand Rapids, 234 Mich.

App. 140, 163 (1999).  To constitute an anticipatory breach of contract, a statement

must be a "definite and unequivocal manifestation of intention on the part of the

repudiator that he will not render the promised performance when the time fixed for it in

the contract arrives."  4 CORBIN ON CONTRACTS, § 973 at 905.  For an oral repudiation,

"a party's language must be sufficiently positive to be reasonably interpreted to mean

that the party will not or cannot perform."  Paul v. Bogle, 193 Mich. App. 479, 494 (1992)

(internal citation omitted).  When a party repudiates a contract, "it is always possible for

the repudiating party to revoke his repudiation and to perform his promise."  Jackson v.

Am. Can Co., 485 F. Supp. 370, 375 (W.D. Mich. 1980).

### 3. Analysis

The statements on which Guenthardt relies are not "definite and unequivocal"

refusals to perform under the contract.  First, during their April 2003 meeting in Florida,

Megge says that he told Guenthardt that if the investments in which MM/Carron's assets

were tied up did not succeed, then MM/Carron's cash on hand would last for

approximately two years.  Megge affirmed that he never intended to suggest that
MM/Carron would not satisfy its obligation to continue to pay for Guenthardt's health
insurance.  Guenthardt affirmed that Megge "thought" that the $60,000 in cash that
MM/Carron had on hand "might" be enough for two more years of insurance premiums.
Second, Guenthardt affirmed in his affidavit that "Megge believes that he is only
obligated to provide group health insurance to me and my wife and not individual
healthcare coverage."  Guenthardt Aff. at ¶ 15 (emphasis in original).  He also affirmed
that "[Megge] has even taken the erroneous position in this lawsuit that since he and
MM/Carron will likely lose group healthcare coverage, perhaps as early as February
2005, and that, if group health coverage is lost, I have no right to healthcare coverage
through an individual policy paid for my him and/or MM/Carron."  Id.  Apart from these
conclusory statements in Guenthardt's affidavit, he provides no documentary or
testimonial support for this position Megge allegedly took.  Based on the record, it
cannot be said that these statements rise to the level of an anticipatory repudiation.

Assuming, arguendo, that Megge's statements were sufficiently definite and
unequivocal to constitute an anticipatory repudiation, defendants nonetheless would be
entitled to summary judgment on this count because they effectively retracted any
repudiation.  Defendants' counsel wrote Guenthardt's counsel on July 25, 2003, and
expressly stated as follows:

> You seem to be implying that there is an anticipatory breach of the
> agreement between Carron & Company and the Guenthardts, which is
> certainly not the case.  Mr. Megge indicates that in the course of a
> luncheon with Mr. Guenthardt, he mentioned that he presently has enough
> cash to cover the commitment for two years, but at no time did he instruct
> Mr. Guenthardt that he assumed that MM Carron Services would not live

13

up to the terms and conditions of any agreement that it might have with the Guenthardts. In fact, Mr. Megge has assured me that MM Carron at the present time has sufficient assets and cash flow to continue to make the premium payments on behalf of Mr. and Mrs. Guenthardt, which the company is currently doing. The long and the short of this is that there is no breach between the parties and not only have the premiums been paid on the medical insurance, but Mr. Megge is also in the process of submitting a check from MM Carron Services to cover the prescription costs that were not covered by the insurance.

Def. Ex. C(2). This letter sufficiently clarified that defendants intended to honor their responsibility to continue to pay the health insurance premiums for Guenthardt. Any arguable repudiation would have been revoked after receipt of this letter.

## C. Count Three: Violation of Mich. Comp. Laws § 450.1345(3)

### 1. Parties' Arguments

Count Three of the complaint alleges that when the assets of Carron were sold in 1996, Megge received a large distribution and has subsequently reduced MM/Carron's assets to the detriment of its creditors, including Guenthardt. Defendants say that MM/Carron has never been unable to meet its obligations to Guenthardt by paying his health insurance premiums and it is undisputed that MM/Carron has reimbursed him for out-of-pocket healthcare expenses. Accordingly, defendants say that Guenthardt's claim under Mich. Comp. Laws § 450.1345(3) is not ripe for adjudication.

Guenthardt responds by stating he has learned that Megge depleted MM/Carron's funds by making unreasonable investment decisions and leaving $60,000 cash on hand. He also complains that Megge made MM/Carron's financial decisions himself without consulting a Blue Cross or other insurance expert.

14

**2. Legal Standard**

Mich. Comp. Laws § 450.1345(3) states:

**450.1345.    Distributions to shareholders; prohibitions, record date, determination, measuring effect, etc.**

. . .

(3) A distribution shall not be made if, after giving it effect, the corporation would not be able to pay its debts as the debts become due in the usual course of business, or the corporation's total assets would be less than the sum of its total liabilities plus, unless the articles of incorporation permit otherwise, the amount that would be needed, if the corporation were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those receiving the distribution.

MICH. COMP. LAWS § 450.1345(3) (emphasis in original).

**3. Analysis**

As an initial matter, a reading of § 450.1345 in its entirety does not indicate that there is a private right of action available under this statute. Assuming that there is, however, the express language of this statute is directed toward corporations making a distribution to shareholders that results in, inter alia, an inability for the corporation to pay its debts as they become due or the corporation having more liabilities than assets. The record does not support either of these conditions. Guenthardt is challenging a distribution made nine years ago – in 1996, when Megge sold Carron. Since that time, and continuing to today, MM/Carron has paid for Guenthardt's health insurance. Guenthardt likewise has not alleged that MM/Carron's liabilities exceed its assets. Guenthardt's claim for violation of Mich. Comp. Laws § 450.1345(3) simply is not ripe for the Court's consideration. See Dixie Fuel Co. v. Comm'r of Soc. Sec, 171 F.3d

15

1052, 1057 (6th Cir. 1999) (describing the doctrine of ripeness as a constitutional necessity to "ensure that courts decide only existing, substantial controversies, not hypothetical questions or possibilities.").

### D. Count Four: Breach of Fiduciary Duty

#### 1. Parties' Arguments

Defendants say that they are entitled to summary judgment on Count Four because (1) Megge does not owe a fiduciary duty to Guenthardt because Guenthardt is a creditor of MM/Carron, not a shareholder; and (2) the relationship between Guenthardt and MM/Carron is a simple contractual one that does not give rise to fiduciary duties.

Guenthardt says that Megge has a fiduciary duty to him because Guenthardt "repos[ed] . . . faith, confidence, and trust" in Megge.  He says that he relied on Megge to act in good faith with respect to his health insurance but that Megge betrayed him by (1) failing to consult Blue Cross or another insurance expert to determine how much money was needed to fund Guenthardt's health insurance, (2) making "absurd decisions to waste money," (3) converting the Blue Cross plan to the CMM plan and then to the PPO plan, and (4) stating that he would arrange for additional health insurance for Guenthardt if MM/Carron dissolved.

#### 2. Legal Standard

"[A] fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another."  Teadt v. Lutheran Church Missouri Synod, 237 Mich. App. 567, 580-81 (1999).  The party with the duty

16

must act for the benefit of the other with respect to matters within the scope of the relationship. Id. at 581. "Relief is granted when such position of influence has been acquired and abused, or when confidence has been reposed and betrayed." Id. Michigan courts recognize fiduciary relationships such as trustees and beneficiaries, guardians and wards, attorneys and clients, and doctors and patients. See Portage Aluminum Co. v. Kentwood Nat'l Bank, 106 Mich. App. 290, 294 (1981). Michigan law does not authorize the imposition of a fiduciary duty in the context of a debtor-creditor relationship. See Farm Credit Servs. of Michigan's Heartland, PCA v. Weldon, 232 Mich. App. 662, 680-81 (1998) (refusing to extend a fiduciary relationship to a lender-borrower context); Glidden Co. v. Jandernoa, 5 F. Supp. 2d 541, 549 (W.D. Mich. 1998) (applying Michigan law) (noting that the typical debtor-creditor relationship does not include fiduciary duties).

### 3. Analysis

The relationship between the parties is a contractual one; more particularly, it is one of debtor-creditor, as Guenthardt is a creditor of MM/Carron. Accordingly, this relationship does not give rise to a fiduciary duty. See Weldon, 232 Mich. App. at 680-81; Jandernoa, 5 F. Supp. 2d at 549. Additionally, as creative as Guenthardt attempts to be in his arguments and pleadings, the record is clear that he has in the past and continues to receive health insurance provided by MM/Carron. The record does not indicate that there has been an interruption in his coverage or an inability on the part of MM/Carron to pay the premiums due. For these additional reasons, even if a fiduciary

relationship did exist between Megge and Guenthardt, any claim for breach of this duty

would fail on ripeness grounds.  See Dixie Fuel Co., 171 F.3d at 1057.

### E. Count Five: Unjust Enrichment

### 1. Parties' Arguments

Defendants say that they are entitled to summary judgment on Count Five

because an express contract (namely the redemption agreement) exists between the

parties.  Defendants say an unjust enrichment claim fails when an express contract

covers the same subject matter as the unjust enrichment claim.

Guenthardt says that an express contract does not exist that covers the same

subject matter as his claim for unjust enrichment.  He says that the redemption

agreement "does not expressly cover Megge's decisions to siphon money out of

MM/Carron and to squander money set aside for health care coverage."

### 2. Legal Standard

Under Michigan law, a claim for unjust enrichment requires (1) receipt of a

benefit by the defendant from the plaintiff, and (2) an inequity resulting to the plaintiff

because of the retention of the benefit by the defendant.  Dumas v. Auto Club Ins.

Ass'n, 437 Mich. 521, 546 (1991).  In such circumstances, the law implies a contract to

prevent unjust enrichment.  Martin v. East Lansing Sch. Dist., 193 Mich. App. 166, 177

(1992).  A contract will be implied only if there is no express contract.  Campbell v. City

of Troy, 42 Mich. App. 534, 537 (1972).  "There cannot be an express and implied

contract covering the same subject matter at the same time."  Id. (internal citation

omitted).  An unjust enrichment claim is inconsistent with this circumstance, as unjust

enrichment is not a viable claim if an express contract governs.  See Terry Barr Sales
Agency, Inc. v. All-Lock Co., 96 F.3d 174, 181 (6th Cir. 1996) (applying Michigan law)
("Where the parties have an enforceable contract and merely dispute its terms, scope,
or effect, one party cannot recover for promissory estoppel and unjust enrichment.").

### 3. Analysis

Guenthardt's argument is unavailing.  The redemption agreement is at the heart
of the parties' dispute and is an express contract governing the subject matter behind
Guenthardt's unjust enrichment claim.  The redemption agreement contains a provision
which, as discussed above, requires the continuation of Guenthardt's health insurance.
Guenthardt is objecting to Megge's financial decisions with respect to MM/Carron, but
the fact remains that Guenthardt has not suffered an interruption or lapse in his health
insurance coverage.  Guenthardt cannot urge the Court to imply a contract under a
theory of unjust enrichment when an express contract exists that governs the
relationship between the parties with respect to health insurance coverage for
Guenthardt.

### F. Count Six: Declaratory Judgment

### 1. Parties' Arguments

In Count Six of the complaint, Guenthardt asks the Court to issue a declaratory
judgment that (1) MM/Carron has a corporate obligation and Megge has a personal
obligation to provide ongoing medical insurance for Guenthardt "equal to or superior" to
the Blue Cross plan, and (2) defendants' inability to maintain group health insurance
coverage does not extinguish their obligation to provide medical insurance to

19

Guenthardt.  Defendants say that they do not dispute their obligation to continue to fund Guenthardt's health insurance at a level "equal to or superior to" the Blue Cross plan. They say that they have in the past and continue to provide this health insurance and, accordingly, a declaratory judgment is inappropriate because there is no controversy between the parties with respect to their legal rights.

Guenthardt responds that there is an actual controversy between the parties because (1) defendants do not believe Megge has any personal responsibility to provide health insurance to Guenthardt and (2) defendants have stated that they have no obligation to provide health insurance to Guenthardt if MM/Carron loses its group coverage status.

### 2. Legal Standard

Guenthardt's papers are silent with respect to the legal standard he seeks to use for his requested declaratory relief.  Under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, an "actual controversy" must exist for a declaratory judgment to be appropriate.  See 28 U.S.C. § 2201.  Under Michigan's declaratory judgment rule, "[i]n a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted."  MICH. CT. R. 2.605.  In either case, a district court has discretion to award a declaratory judgment. Abbott Labs v. Gardner, 387 U.S. 136, 155 (1967); see also AmSouth Bank v. Dale, 386 F.3d 763, 784 (6th Cir. 2004).

### 3. Analysis

Defendants concede that they are obligated under the redemption agreement to provide Guenthardt with health insurance.  The parties' principal dispute centers on whether the coverage Guenthardt has now is "equal to or superior to" the Blue Cross plan.  It appears to the Court that the relief Guenthardt seeks in his request for declaratory judgment is duplicative of that which he seeks in Count One (Breach of Contract).  Accordingly, the Court, in its discretion, declines to entertain Guenthardt's claim for a declaratory judgment.  See Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C., 176 F.3d 904, 908 (6th Cir. 1999) (applying Michigan law) (holding that declaratory judgment would be redundant to relief already sought for breach of contract); Florists' Transworld Delivery, Inc. v. Fleurop-Interflora, 261 F. Supp. 2d 837, 847 (E.D. Mich. 2003) (same).

### V. Conclusion

In sum, defendants' motion for summary judgment with respect to Count One (Breach of Contract) is DENIED.  Defendants are entitled to summary judgment on all the remaining counts of the complaint.  Accordingly, Counts Two through Six are DISMISSED.  Guenthardt's motion for partial summary judgment is DENIED.

SO ORDERED.


  s/Avern Cohn

Dated:  August 16, 2005                    AVERN COHN
                              UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was sent to counsel of record on this date, August 16, 2005, by electronic and/or ordinary mail.

  s/Julie Owens
  Case Manager, (313) 234-5160

21